# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

Reporter of Decisions:
Kathryn L. Loomis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v FURLINE
PEOPLE v JENKINS

Docket Nos. 158296 and 158298. Argued on application for leave to appeal October 3, 2019. Decided March 12, 2020.

Terrance A. Furline and Alvin B. Jenkins, Sr., were convicted, after a joint jury trial in the Saginaw Circuit Court, of criminal enterprise, arson, retail fraud, and related crimes under an aiding-and-abetting theory in connection with a fire and subsequent attempted theft at a home-improvement store in Saginaw. Furline moved to be tried separately from Jenkins, arguing that a joint trial would prejudice his substantial rights because Jenkins had stated, in a videotaped interview with detectives from the Saginaw County Sheriff's Department, that Furline had told Jenkins he planned to set the fire and encouraged Jenkins to steal items during the ensuing commotion. Furline further argued that, because he planned to defend against the charges on the grounds that he was presumed innocent and that Jenkins had acted alone in setting the fire and attempting to commit retail fraud, their defenses were antagonistic and mutually exclusive and Furline would be denied his right to cross-examine Jenkins about his statements in the interview. The court, James T. Borchard, J., denied the motion for severance, and, after defendants were tried jointly and convicted, they appealed their convictions. The Court of Appeals, O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ., consolidated the appeals and held that the trial court had abused its discretion by denying the motion for severance. Accordingly, the Court of Appeals vacated defendants' convictions and sentences and remanded the cases for new trials. *People v Furline*, unpublished per curiam opinion of the Court of Appeals, issued July 3, 2018 (Docket No. 335906). The prosecution sought leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other action. 503 Mich 942 (2019).

In a per curiam opinion signed by Chief Justice MCCORMACK and Justices MARKMAN, ZAHRA, VIVIANO, and CLEMENT, in lieu of granting leave to appeal, the Supreme Court *held*:

The Court of Appeals erred by vacating defendants' convictions and sentences and remanding for a new trial. Severance is mandated only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that the defendant's substantial rights will be prejudiced by a joint trial and that severance is the necessary means of rectifying the potential prejudice. The trial court correctly ruled that Furline failed to show that he was entitled to severance in his motion and supporting

affidavit, and this decision must be upheld because there was no significant indication on appeal that the requisite prejudice actually occurred at trial.

1. MCR 6.121(C) requires a trial court to sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to a defendant's substantial rights. Under *People v Hana*, 447 Mich 325 (1994), severance is mandated only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that the defendant's substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to show that the requisite prejudice to substantial rights in fact occurred at trial precludes the reversal of a joinder decision. While severance may be warranted when defendants' mutually exclusive or antagonistic defenses create a serious risk of prejudice, the defenses must be irreconcilable and create such great tension that a jury would have to believe one defendant at the expense of the other. Prejudice requiring reversal occurs only when the competing defenses are so antagonistic at their cores that both cannot be believed. Incidental spillover prejudice, which is almost inevitable in a multidefendant trial, does not suffice for reversal.

2. The trial court correctly ruled that Furline failed to show that he was entitled to severance in his motion and supporting affidavit. Furline offered two theories of prejudice. First, Furline anticipated that the prosecutor would offer into evidence a video in which Jenkins denied setting the fire in the Saginaw store and stated that Furline admitted setting that fire. Furline argued that he would be prejudiced by the inability to confront and to cross-examine Jenkins about these statements. Second, believing that Jenkins would claim that Furline acted alone, Furline argued that he would be prejudiced by the need to defend not only against the prosecutor's case but also against Jenkins's defense theory. But at the hearing on Furline's motion, the prosecutor expressed his intent not to offer the video into evidence. The allegations in Furline's affidavit did not demonstrate that his substantial rights would be prejudiced at trial without severance because these allegations were either irrelevant, involved legal conclusions rather than facts, or involved the contents of the video that the prosecutor agreed not to offer into evidence.

3. The trial court's decision must be upheld because there was not a significant indication on appeal that the requisite prejudice actually occurred at trial. Furline feared that he would have to defend against Jenkins's theory that Furline set the fire and that, in light of Jenkins's theory, he would struggle to show that Jenkins acted alone. Neither fear came to pass because Jenkins offered no evidence that Furline started the fire at the Saginaw store and Furline offered no evidence that Jenkins acted alone. The record did not support the proposition that either defendant sought to convict the other or that either had to defend in turn against the other's antagonistic defense. Each defendant experienced, at most, incidental spillover prejudice rather than the degree of prejudice required to reverse the trial court's joinder decision.

Court of Appeals judgment reversed; defendants' convictions and sentences reinstated; Furline's cross-application for leave to appeal denied.

Justice CAVANAGH, joined by Justice BERNSTEIN, concurred but wrote separately to avoid possible misinterpretations. She stated that review of the trial court's decision to deny pretrial severance is accomplished by reference to the pretrial motion and affidavit, while review of

prejudice that might have occurred at trial is a separate inquiry. Review of the trial court's pretrial decision to deny severance in this case was simple, given that the only pretrial prejudice theory advanced by either defendant was addressed when the prosecution agreed to forgo the use of Jenkins's recorded statement. With respect to whether there was any significant indication on appeal that the requisite prejudice in fact occurred at trial, she noted that the defenses actually presented at trial were neither mutually exclusive nor irreconcilable; rather, each defendant argued that the prosecution had not met its burden against either of them. Justice CAVANAGH further stated that she did not understand the Court's opinion to hold that the prosecution can avoid severance simply by charging codefendants under an aiding-and-abetting theory because the relevant inquiry is not the prosecution's theory but the defenses offered by the defendants.

©2020 State of Michigan

# OPINION

Chief Justice:
  Bridget M. McCormack

Chief Justice Pro Tem:
  David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED March 12, 2020

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                No. 158296

TERRANCE ANTHONY FURLINE,

    Defendant-Appellee.

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                No. 158298

ALVIN BERNARD JENKINS, SR.,

    Defendant-Appellee.

BEFORE THE ENTIRE BENCH

PER CURIAM.

In October 2015, a fire broke out at the Home Depot in Flint Township and, in the ensuing commotion, merchandise was stolen. The next day, a fire broke out at the Home Depot in Saginaw, but an attentive employee, tipped off that morning by the Flint store's loss-prevention staff, foiled a theft attempt by grabbing a cart full of big-ticket items before a man, who turned out to be Alvin Jenkins, could make off with it. After a police investigation, Jenkins and Terrance Furline were arrested and charged in Saginaw County with criminal enterprise, arson, retail fraud, and related crimes, under an aiding-and-abetting theory. Furline moved to be tried separately from Jenkins. The trial court denied Furline's motion. After a joint trial, a jury convicted each defendant on all charges. Furline appealed the severance issue in the Court of Appeals, which vacated and remanded for proceedings "with some device of severance." The prosecutor then sought this Court's leave to appeal.[1] Rather than grant leave, we reverse the Court of Appeals' judgment and reinstate defendants' convictions and sentences.

The decision to try two defendants jointly or separately lies within the discretion of the trial court, and that decision will not be overturned absent an abuse of that discretion. *People v Hana*, 447 Mich 325, 331; 524 NW2d 682 (1994); see also MCL 768.5.

Under MCR 6.121(C), the trial court "must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." According to *Hana*, 447 Mich at 346, "[s]everance is mandated . . . only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be

---

[1] Furline cross-applied for leave to appeal. We deny his cross-application because we are not persuaded that the questions he presented should be reviewed by this Court.

prejudiced and that severance is the necessary means of rectifying the potential prejudice." The affidavit or offer of proof must state "facts on which the court might determine whether . . . a joint trial might result in prejudice." *Id*. at 339 (cleaned up). A court can reject statements that are "conclusory" or that "lack[] sufficient specificity to enable the trial court to accurately determine what the [joined defendants'] defenses would be, how the defenses would affect each other, and whether the defendants' respective positions were indeed mutually exclusive or merely inconsistent." *Id*. at 355. A defendant's claim of prejudice must be "substantiated" through "concrete facts." *Id*. We stressed in *Hana* that the failure to show prejudice to substantial rights, "absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision." *Id*. at 347.

As *Hana* acknowledged, severance may be warranted when defendants' "mutually exclusive" or "antagonistic" defenses create a "serious risk" of prejudice. *Id*. at 344-346 (cleaned up). But we explained that the defenses must be "irreconcilable" and create such great tension "that a jury would have to believe one defendant at the expense of the other." *Id*. at 349 (cleaned up). "Defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." *Id*. at 350 (cleaned up). Prejudice requiring reversal occurs "only when the competing defenses are so antagonistic at their cores that both cannot be believed." *Id*. at 349-350 (cleaned up). But "incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice." *Id*. at 349 (cleaned up). When the prosecutor relies on aiding-and-abetting liability, finger-pointing—each defendant's proceeding on a theory that "the other

3

guy did it"—"does not create mutually exclusive antagonistic defenses." *Id*. at 361. Both defendants may be found "similarly liable without any prejudice or inconsistency because one found guilty of aiding and abetting can also be held liable as a principal." *Id*.

In his trial motion and supporting affidavit, Furline offered two theories of prejudice. First, he anticipated that the prosecutor would offer into evidence a video in which Jenkins denied setting the fire in the Saginaw store, accused Furline of setting that fire, and stated that Furline admitted setting that fire; Furline argued that he would be prejudiced by the inability to confront and to cross-examine Jenkins about these statements. Cf. *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). Second, believing that Jenkins would claim that Furline acted alone, Furline argued that he would be prejudiced by the need to defend not only against the prosecutor's case but also against Jenkins's defense theory. In a hearing on Furline's motion, Furline's counsel focused on the Jenkins video as a source of prejudice, and the prosecutor expressed his intent not to offer the video into evidence. In a written opinion, the trial court denied relief on the basis that Furline had shown "merely antagonistic," but not "irreconcilable," "claims as to who was responsible for setting the fire."

We agree with the trial court that Furline failed to show that he was entitled to severance in his motion and affidavit. Furline's affidavit offered the following allegations:

> 1. I am charged, along with co-defendant, Alvin Bernard Jenkins, Sr., with Criminal Enterprise, Conspiracy, Arson and Retail Fraud as a result of an incident on October 29, 2015, at Home Depot in Kochville Township, Saginaw County, MI.

> 2. That co-defendant Jenkins has given taped statements in which he claimed that I started the fire at Home Depot, and that I admitted this to him.

4

3. That I deny setting the fire at Home Depot, and deny ever admitting this to anyone and Jenkins is lying about this.

4. That should this case proceed to Trial with two defendants, it is anticipated that a [*Bruton v United States*] situation will arise where Defendant Furline may be denied his right to confront the witness against him, in the event the videotaped statement of Jenkins is played before the jury.

5. That the defenses of defendant Furline and co-defendant Jenkins are antagonistic and mutually exclusive and require severance under [*People v Hana*].

6. That unless the trials of Furline and Jenkins are separated, my substantial rights will be prejudiced and that severance is necessary to rectify the possible prejudice. [Cleaned up.]

These allegations don't demonstrate that Furline's substantial rights would be prejudiced at trial without severance. Paragraph 1 is contextual and not relevant to the severance analysis. Paragraphs 2 and 4 relate directly to prejudice caused by the Jenkins video and so are obviated by the prosecutor's agreement not to offer that video into evidence. While Paragraph 3 doesn't mention the video, its denials correspond to Jenkins's accusations in the video (i.e., the "taped statements" described in Paragraph 2); so, like Paragraphs 2 and 4, this paragraph is obviated by the prosecutor's agreement. Paragraphs 5 and 6 contain legal conclusions rather than facts and so don't contribute to Furline's burden. It is clear to us, in light of the prosecutor's agreement, that Furline's affidavit lacks the "concrete facts" to "fully demonstrate" his claim of prejudice. *Hana*, 447 Mich at 355.

In light of the failure of Furline's affidavit to articulate a prejudice theory that materialized at trial, we reject the Court of Appeals' belief that the trial court "was fully apprised of the specifics of the codefendants' mutually exclusive defenses and the potential prejudice from one defendant being pitted against another in order to prove each's

5

innocence." *People v Furline*, unpublished per curiam opinion of the Court of Appeals, issued July 3, 2018 (Docket Nos. 335906 and 336203), p 7. Even if Furline's motion "fully apprised" the trial court of his defense—he said in his motion that he intended "to defend this matter by relying on his presumption of innocence and requiring the People to meet their burden of proof"—the prosecution met its burden of demonstrating each individual defendant's guilt without either defendant's help.

For these reasons, we see no error in the trial court's denial of Furline's motion.

The trial court's decision must be upheld absent a "significant indication on appeal that the requisite prejudice" actually occurred at trial. *Hana*, 447 Mich at 347. We believe that no such prejudice actually occurred. Furline feared that he would have to defend against Jenkins's theory that Furline set the fire and that, in light of Jenkins's theory, he would struggle to show that Jenkins acted alone. Neither fear came to pass since Jenkins offered no evidence that Furline started the fire at the Saginaw store and Furline offered no evidence that Jenkins acted alone.

The Court of Appeals exaggerated the extent to which each defendant contributed to proving the other's culpability. Furline averred in his motion that his and Jenkins's defenses would require Furline to "seek to convict the other, and defend in turn against the other's antagonistic defense, while also defending against the prosecution's case." The Court of Appeals believed that defendants were prejudiced at trial because each had "to prove the other's culpability through each witness's testimony." *Furline*, unpub op at 8. But, as explained below, the record doesn't support the proposition that either defendant "sought to convict the other" or that either had to "defend in turn against the other's antagonistic defense."

6

The Court of Appeals started with whether joinder prejudiced Jenkins—even though Jenkins never moved for a separate trial and did not raise the severance issue on appeal. The Court of Appeals cited the testimony of Doris Walker-Furline, a witness called by the prosecutor. Walker-Furline, Furline's mother and an accomplice in the Flint incident, testified that Furline had known Jenkins only for a week, that Jenkins had set the Flint fire, that Furline was present for (but did not participate in) the Flint incident, and that Jenkins wished to repeat the scheme at the Saginaw store. As the Court put it, "Without Furline having to testify himself, his mother's testimony was evidence that promoted his defense that it was Jenkins [sic] idea to commit arsons and thefts at home improvement stores and he had nothing to do with Jenkins' plan." *Id*. But Walker-Furline lacked direct knowledge of the Saginaw incident, and her testimony placed Furline at the Flint store—hardly exonerating. Nothing in the Court of Appeals' characterization of Walker-Furline's testimony suggested that Furline "sought to convict" Jenkins. Nor did it cause Jenkins to have to "defend against [Furline's] antagonistic defense."

As to the prejudice to Furline, the Court of Appeals identified Jenkins's counsel's cross-examinations of Walker-Furline and of Joy Royal, another witness called by the prosecutor. Jenkins's counsel tried and failed to elicit Walker-Furline's acknowledgment that Furline was involved in the Flint incident. From Royal, he got testimony that Furline had been involved in a "no receipt" return at a Lowe's store. While Jenkins's counsel perhaps wished to highlight Furline's involvement, that involvement already had been shown by the prosecutor.

The Court of Appeals characterized "[t]his situation" as creating "a subtle effect of joining defendants who have asserted mutually exclusive defenses." *Furline*, unpub op at

7

8.  It then offered this curious quotation, from *United States v Tootick*, 952 F2d 1078, 1083 (CA 9, 1991):  " 'All evidence having the effect of exonerating one defendant implicitly indicts the other.  The defendant must not only contend with the effects of the government's case against him, but he must also confront the negative effects of the codefendant's case.' "  *Furline*, unpub op at 8.  But contrary to the Court of Appeals' implication, defendants here weren't forced into a zero-sum contest.  And, as we've noted, neither defendant contributed meaningfully to the prosecutor's case.  Even if the circumstances of this case created a "subtle effect" of joining defendants, that effect was dwarfed by the palpable effect of the prosecutor's joining defendants—intentionally and appropriately— under an aiding-and-abetting theory.  Cf. *People v Pipes*, 475 Mich 267, 280; 715 NW2d 290 (2006) ("The Court of Appeals failed to give sufficient weight to the evidence that was properly admitted against each defendant."); *Zafiro v United States*, 506 US 534, 543; 113 S Ct 933; 122 L Ed 2d 317 (1993) (Stevens, J., concurring in the judgment) ("[Where mutually exclusive defenses transform a trial into a contest between the defendants], joinder may well be highly prejudicial, particularly when the prosecutor's own case in chief is marginal and the decisive evidence of guilt is left to be provided by a codefendant.").

While the Court of Appeals characterized this case as asking the jury to choose "which of the two was guilty," *Furline*, unpub op at 8, we emphasize that the prosecutor's case gave the jury a third option: "both."  See *Hana*, 447 Mich at 361 ("[The] jury could have found both defendants similarly liable without any prejudice or inconsistency because one found guilty of aiding and abetting can also be held liable as a principal.").

Since Furline failed to articulate a prejudice theory that materialized at trial, we reject the Court of Appeals' belief that the trial court "was fully apprised of the specifics

8

of the codefendants' mutually exclusive defenses and the potential prejudice from one defendant being pitted against another in order to prove each's innocence." *Furline*, unpub op at 7. As explained above, Furline's motion did not "fully demonstrate" potential prejudice. And any prejudice arguably conveyed by the motion and affidavit did not occur at trial. Each defendant experienced, at most, "incidental spillover prejudice" rather than the degree of prejudice required to reverse the trial court's joinder decision. *Hana*, 447 Mich at 347, 349. For these reasons, we conclude that the Court of Appeals erred. We reverse.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Elizabeth T. Clement

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                       No. 158296

TERRANCE ANTHONY FURLINE,

      Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                         No. 158298

ALVIN BERNARD JENKINS, SR.,

      Defendant-Appellee.

_____

CAVANAGH, J. (*concurring*).

I concur with the majority opinion but write separately to avoid possible misinterpretations. Review of the trial court's decision to deny pretrial severance is accomplished by reference to the pretrial motion and affidavit, while review of prejudice that might have occurred at trial is a separate inquiry.

Review of the trial court's pretrial decision to deny severance here is simple. As the majority notes, the only pretrial prejudice theory advanced by either defendant was contained in Paragraphs 2 through 4 of the affidavit attached to defendant Furline's motion for severance. That concern was addressed when the prosecution agreed to forgo use of

defendant Jenkins's recorded statement. That issue resolved, there was no offer of proof before the court as to how joinder would result in prejudice to either defendant. See *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994) ("Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice."). On that basis alone, the trial court's pretrial decision to deny severance should be affirmed.

However, there is also a second inquiry: whether there is "any significant indication on appeal that the requisite prejudice in fact occurred at trial . . . ." *Id*. at 347. To answer that question, we ask whether the defenses which were actually presented at trial were " 'mutually exclusive' " or " 'irreconcilable.' " *Id*. at 349 (citations omitted). That happens when the " 'tension between defenses [was] so great that a jury would have to believe one defendant at the expense of the other.' " *Id*., quoting *United States v Yefsky*, 994 F2d 885, 896 (CA 1, 1993). Said another way, " 'defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant.' " *Hana*, 447 Mich at 350, quoting *State v Kinkade*, 140 Ariz 91, 93; 680 P2d 801 (1984). That was not the case here.

This is best illustrated by reference to defense counsels' closing arguments, where defendants' defenses were summarized. Defendant Furline's defense was not that defendant Jenkins committed the crimes in question alone, but simply that the prosecution had generally not proven its case beyond a reasonable doubt. For example, defendant

2

Furline's counsel did not specifically argue that defendant Jenkins set the fire, but that "100 other people perhaps" were in the store also. Similarly, defendant Jenkins's counsel did not argue that defendant Furline set the fire, but to the contrary said "[t]here is nothing that says that Mr. Furline was going back to set a fire. There is no evidence of that as [defendant Furline's counsel] pointed out." Rather than presenting the "mutually exclusive" or "irreconcilable" defenses that the other defendant did everything, each defendant argued the prosecution had not met its burden against either of them.

Also, I do not understand the Court's opinion to hold that the prosecution can avoid severance simply by charging codefendants under an aiding-and-abetting theory. As described above and in *Hana*, the relevant inquiry is not the prosecution's theory but the defenses offered by the defendants. We did say in *Hana* that "[f]inger pointing by the defendants when such a prosecution theory is pursued does not create mutually exclusive antagonistic defenses." *Hana*, 447 Mich at 360-361. However, that was in relation to the companion cases of *People v Rode* and *People v Gallina*. In those cases, the defendants took turns firing a gun at an occupied car, each with the apparent encouragement of the other. *Id*. at 335-336. At one point, Rode reloaded the gun with bullets supplied by Gallina. *Id*. at 335. A fatal shot was fired at the second car after the collaborative reload. *Id*. at 336. Each defendant testified, and the core of their defenses was that " 'each claimed that the other defendant fired the gun.' " *Id*. (citation omitted). In that context, it made no difference who fired the gun. But other defense theories in other aiding-and-abetting cases may be antagonistic enough to require severance.

3

Because neither defendant made a pretrial offer of proof alerting the trial court that defendants would present mutually exclusive defenses, and because no prejudice occurred at trial, I concur.

Megan K. Cavanagh
Richard H. Bernstein